## EDWIN MILES v. W. H. EVERSON ET AL.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLE-
GHENY COUNTY.

Argued October 29, 1888—Decided January 7, 1889.

(a) By the articles dissolving a partnership association, members retiring
sold to the others the entire partnership property and assets, the vendees
covenanting to pay the " indebtedness " of the firm described as amount-
ing to a certain sum, which indebtedness the vendees discharged.

(b) Subsequently, a judgment was obtained against the partnership, in an
action for negligence pending at the time of the dissolution, which
judgment was paid by the retiring members, on process issued, who
then brought suit against the vendees for the amount thereof, upon their
covenant in the articles of dissolution.

1. In such case, whether the enforced liability was within the term, in-
debtedness, or, whether it was overlooked when the articles were exe-
cuted, the liability of the vendees upon their covenant was discharged
on the payment by them of the amount of the indebtedness stated in the
articles, and beyond that there was no undertaking.

2. The partners, as between themselves, being liable each to the others
for a share of the enforced liability proportionate to his interest in
the firm at the time it was incurred, the question whether such shares of
the vendees were recoverable in this form of action, not being raised,
is not decided.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK,
WILLIAMS and HAND, JJ.

No. 184 October Term 1888, Sup. Ct.; court below, No. 653
June Term 1887, C. P. No. 1.

A summons in case to the first Monday of June, 1887, was
duly served in an action by Wm. H. Everson, C. L. Graff,
John Q. Everson and Walter T. Brown, against Edwin Miles,
surviving D. S. Maccrum, deceased.

At the trial on February 15, 1888, the plaintiffs showed that
prior to August 1, 1883, W. H. Everson, C. L. Graff, John Q.
Everson, Walter T. Brown, Edwin Miles and D. S. Maccrum
were copartners carrying on two distinct enterprises with their
common capital and, for convenience, keeping separate books
for each business.   One of these enterprises was the operation

of two rolling mills, as Everson, Maccrum & Co., and the other, the operation of an iron furnace and coke works, at Scottdale, as the Charlotte Furnace Company; that in pursuance of an agreement dated September, 1883, exhibit 4, signed by all the partners, the partnership was dissolved as of August 1, 1883, and W. S. Everson, C. L. Graff, John Q. Everson and Walter T. Brown, as parties of the first part, assigned, transferred and set over to D. S. Maccrum and Edwin Miles, as parties of the second part, all the property and effects, real and personal, connected with the business of the Charlotte Furnace Co., "subject to the payment, by said parties of the second part, of the indebtedness of the Charlotte Furnace Co. amounting to the sum of $73,385.66, and to Nimick & Co., the sum of $65,253.48, on account of the indebtedness of the firm of Everson, Maccrum & Co.; the said transfer to be in settlement and satisfaction of the capital stock and all other interests in and claims and demands of said D. S. Maccrum and Edwin Miles against said copartnership or firms;" the parties of the second part by the same agreement assigning and transferring to the parties of the first part all the property and effects, real and personal, connected with the business of the rolling mills, and further agreeing as follows:

"And said parties of the second part have agreed and do hereby agree to pay, or otherwise satisfy, the indebtedness of said firm known as Charlotte Furnace Company, amounting to the sum of $73,385.66 and to pay, or otherwise satisfy, the sum of $65,253.48 on account of the indebtedness of the firm of Everson, Maccrum & Co. to said Nimick & Co. and to procure said Nimick & Co.'s receipt and release for that amount of said indebtedness and save, indemnify and keep harmless the said Wm. H. Everson, John Q. Everson, C. L. Graff, Walter T. Brown, from all claim and demand against them for or on account of the same."

It was then shown by the plaintiffs, who were the parties of the first part to the said agreement, that before the date of the dissolution of the copartnership, one Isaac Rawlinson, while employed at the Charlotte Furnace Company's works, had received injuries which he charged to the alleged negligence of the company; that Rawlinson had brought suit in Fayette county against W. H. Everson, E. Miles and D. S. Maccrum,

partners as the Charlotte Furnace Company, and on February 17, 1886, had recovered a verdict for $3,000, as damages for said injuries ; that subsequently, on April 29, 1887, a testatum fieri facias having issued from Fayette county upon the judgment entered upon said verdict, W. H. Everson paid to the sheriff of Allegheny county, to whom said writ was directed, the debt, interest and costs thereon, to wit: $3,417.15, with money contributed by himself and his co-plaintiffs. It was also shown that the interests of Maccrum and Miles in the dissolved copartnership were two fourteenths and three fourteenths, respectively.

The defendant put in evidence a prior and informal agreement between the copartners, dated August 20, 1883, exhibit 8, not as contradictory of that marked exhibit 4, but "simply as throwing light on it," and introduced evidence from which it was claimed that Maccrum and Miles had discharged all the obligations assumed by them in the agreement of September, 1883, exhibit 4.

[As explanatory, perhaps, of the last sentence of the opinion of this court, it may be stated that neither the declaration nor pleas, the affidavit of claim, nor the affidavit of defence, appeared in the paper books presented.]

At the close of the case on the testimony, the court, COLLIER, J., instructed the jury:

The defendant requests the court to charge :

1. That the Rawlinson claim, under all the evidence in this case, is not within the covenants of Miles and Maccrum, as set forth in the agreements, exhibits Nos. 4 and 8, and the plaintiffs therefore cannot recover.

Answer : Refused.[1]

[This case turns mainly on a question of law, and, as you have heard the court say, it is not very clear and probably will have to be finally decided, the agreement construed, by our Supreme Court. I have arrived at an interpretation that I think is correct ; at any rate, it satisfies me, and it is my duty to say so to you, that under the agreement made by these people on the dissolution, which is in these words: "And the said parties of the second part have agreed, and do hereby agree, to pay or otherwise satisfy the indebtedness of the said firm

known as the Charlotte Furnace Company, amounting to the sum of $73,000," you are in duty bound to find for the plaintiffs, unless the defendant has satisfied you that this claim for damages which existed at the time—I believe suit had already been brought—was not considered by the parties at all, was left out, was not taken into account at all. Unless that is affirmatively shown to you, which would be equivalent to leaving it out intentionally, not including it, your duty would be to find for the plaintiffs ; for, the agreement is, the defendants are to pay or satisfy all indebtedness of the Charlotte Furnace Company, whatsoever that was, all liabilities, and this was a liability, this was an indebtedness under that. Unless, as I say, the defendant has satisfied you this claim was not considered—the suit, not having been brought, was not considered by them—was not to go in at all into this statement of the debts, indebtedness, your verdict must be for the plaintiffs. Upon that you have testimony on both sides, and you will say how it is, but unless you find that fact, and the burden is on the defendant, your verdict should be for the plaintiffs for the amount claimed. If you find it was not considered by either of the parties, was not pretended to be taken in, was not thought of, was not intended to be, you would find for the defendant.] [2]

The jury returned a verdict in favor of the plaintiffs for $3,590.34. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this writ, assigning as error :

1. The answer to defendant's points.[1]
2. The charge of the court embraced in [　] [2]

*Mr. John S. Ferguson* (with him *Mr. James F. Robb*), for the plaintiff in error :

The liability to Rawlinson in damages for the injuries he received, his suit still pending when the agreement was signed, does not come within the meaning of the term, indebtedness, either in its legal or popular signification. A debt means a fixed and certain obligation to pay money or some valuable thing, either in the present or in the future : Erie City's App ; 91 Pa. 402 ; Rap. & L., L. D., 351 ; Zinn v. Ritterman, 2 Abb.

Pr., N. S., 262; Parker v. Savage, 6 Lea 406. A disputed claim for damages sounding in tort, is not a debt before it is prosecuted to judgment: Hill v. Bowman, 3 Mich. 191; Detroit etc. Co. v. Reilly, 46 Mich. 459; Warner v. Cammack, 37 Iowa 642; Cable v. McCune, 26 Mo. 371 (72 Amer. D. 214); Cable v. Gary, 34 Mo. 573; Crouch v. Gridley, 6 Hill 250; Kellog v. Schuyler, 2 Den. 74; Rugan v. West, 1 Binn. 263; Fisher v. Consequa, 2 Wash. C. C. 385.

*Mr. George W. Guthrie* (with him *Mr. Wm. McCrum*), for the defendants in error:

The word, debt, even when used in statutes, has been expressly held to include claims for damages sounding exclusively in tort. In Carver v. Braintree Mfg. Co., 2 Story 432, where the charter of a company provided that the stockholders should be liable for all "debts contracted" while they were members, it was held that the words would include a claim for damages for a tort committed. The same rule was applied in Mill Dam v. Hovey, 21 Pick. 417; Gray v. Bennett, 3 Metc. 522; Bispham v. Price, 15 How. 162. Moreover, the jury were instructed that if they should find that the Rawlinson claim "was not considered by either of the parties, was not pretended to be taken in, was not thought of, was not intended to be," then the verdict should be for the defendant. We submit that in this there is nothing of which the defendant can complain.

OPINION, MR. JUSTICE GREEN:

Whatever might have been the effect of an unlimited covenant by Miles and Maccrum to pay the indebtedness of the Charlotte Furnace Company, it is manifest that their engagement by the contract in question in this cause was not of that character. The obligation of Miles and Maccrum in this regard is a part of the transfer by the other parties of their interest in the assets of the furnace company, and is introduced in the form of a condition, thus: "Subject to the payment by said parties of the second part of the indebtedness of the Charlotte Furnace Company amounting to the sum of $73,385.66." Upon the plain meaning of this language, the duty of Miles and Maccrum has been discharged when they have paid the indebtedness of the furnace company to the extent of $73,385.66.

This they have done, but it is claimed by the plaintiffs, who are the other parties to the contract, that they are liable to make a further payment by force of the operative words above recited. The argument in support of this contention is founded upon the proposition that the legal obligation which was enforced against the plaintiffs was a debt of the furnace company and is therefore included within the true meaning of the word, indebtedness. In reply to this the defendant contends that the enforced obligation was a liability and not a debt in the technical sense of that word, and hence was not included in the necessary meaning of the word, indebtedness. To us it seems immaterial in which of these senses the obligation to compensate Rawlinson for his injuries is regarded, because the undertaking of Miles and Maccrum to pay money vicariously for the Charlotte Furnace Company is limited by the sum of $73,385.66. When they have paid that amount they have paid to the full measure of their covenant, and beyond that there is no undertaking. Such is the plain meaning of the words of the contract, and we are not at liberty to give them any other.

It may be, and probably is the fact, that the liability to Rawlinson was overlooked and not thought of when the agreement was made, but that is of no consequence when considering the language of the written stipulation. It must be enforced by the courts according to the terms used by the parties. There is no ambiguity that needs explanation, and the words employed must receive their literal interpretation. This being so it follows that all the persons who were partners in the Charlotte Furnace Company when Rawlinson was injured, are alike liable according to the terms of their copartnership, and only the proportionate share which the defendant is liable for can be recovered from him. We decide nothing as to the propriety of the present form of action for that recovery, as that question is not before us.

> Judgment reversed, and a venire facias de novo awarded.